## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

**KARL VON DERHAAR**                           **CIVIL ACTION NO:** 21-1653

**VERSUS**

**MICHAEL STALBERT, IN BOTH HIS
INDIVIDUAL AND OFFICIAL CAPACITY,
LAWRENCE                                        JUDGE
JONES, IN BOTH HIS INDIVIDUAL
AND OFFICIAL CAPACITY,
KIM WILLIAMS, IN BOTH HER
INDIVIDUAL AND OFFICIAL
CAPACITY,  DARRYL WATSON IN BOTH
 HIS OFFICIAL AND INDIVIDUAL CAPACITY,
KHALID WATSON IN BOTH HIS OFFICIAL
AND INDIVIDUAL CAPACITY
AND SHAUN D.  FERGUSON
SUPERINTENDENT                                 MAGISTRATE
OF THE NEW ORLEANS POLICE
DEPARTMENT, IN HIS OFFICIAL
CAPACITY AND THE CITY OF
NEW ORLEANS THROUGH THE MAYOR               JURY TRIAL REQUESTED
OF THE CITY OF NEW ORLEANS, LATOYA
CANTRELL**
*************************************************************************

## PETITION FOR DAMAGES

### Complaint for Damages Against Police Officers for Unlawful Arrest, Search, and Seizure

1. This is a civil action seeking damages against DEFENDANTS,   as joint tortfeasors jointly

   and insolido, for committing acts under color of law, and depriving  PETITIONER KARL

   VON DERHAAR of rights secured by the Constitution and laws of the United States.

   DEFENDANTS, while acting in their capacities as police officers in the City of New

   Orleans, Parish of Orleans, State of Louisiana, deprived  PETITIONER KARL VON

   DERHAAR of his liberty without due process of law, made an unreasonable search and

   seizure of the person and property of  PETITIONER KARL VON DERHAAR, and deprived

   PETITIONER  KARL VON DERHAAR of his property without due process of law, thereby

depriving  PETITIONER KARL VON DERHAAR of his rights, privileges and immunities as guaranteed by the Fourth and Fourteenth Amendments to the Constitution of the United States. The Court has jurisdiction of this action under 42 U.S.C. § 1983 and under 28 U.S.C, § 1343.

2.   The jurisdiction of this Court is further invoked pursuant to 28 U.S.C. § 1331.

3.    PETITIONER KARL VON DERHAAR is a citizen and resident of the State of Louisiana and a citizen of the United States domiciled at 1610 Robert E. Lee Blvd, New Orleans, La. 70122 where PETITIONER was illegally falsely arrested, his residence illegally  searched and  residence illegally entered by DEFENDANTS, and his cell phone seized all without probable cause and without a search  nor any an arrest warrant on September 3, 2020. All the torturous events occurred within the jurisdiction of this Federal Court in the Parish of Orleans, State of Louisiana.

4.   DEFENDANTS Michael A. Stalbert,  N.O.P.D. Crime Lab Supervisor  Drug Chemistry and. Crime Technician, Lawrence Jones, assigned to Police Integrity Bureau (P.I.B.) Khalid Watson, Third District N.O.P.D.,  Darryl Watson, and Kim Williams,  Supervisor of N.O.P.D. Crime Lab,  were, at all times material to this Complaint, duly appointed police officers of the City of New Orleans, assigned to the New Orleans Police Department Crime Lab, P.I.B. and Third District Police Station of the New Orleans Police Department. At all times material to this Complaint, these DEFENDANTS acted toward PETITIONER VON DERHAAR under color of the statutes, ordinances, customs, and usage of the State of Louisiana, City of New Orleans, and the New Orleans Police Department,

5.   DEFENDANTS Michael A. Stalbert, Lawrence Jones, Darryl Watson, Khalid Watson, Kim

Williams,  Superintendent Shaun Ferguson and others not presently known to the

PETITIONER VON DERHAAR were, at all times material to this complaint, duly appointed

police officers of the City of New Orleans acting in the course and scope of their

employment as police officers of the City of New Orleans acting under color of law. At all

times material to this Complaint, these DEFENDANTS acted toward  PETITIONER  KARL

VON DERHAAR, under color of the statutes, ordinances, customs, and usage of the State of

Louisiana, City of New Orleans, and the New Orleans Police Department.


6.   PETITIONER KARL VON DERHAAR sues all DEFENDANTS  in their individual

capacities,  except  N.O.P.D. Superintendent Shaun Ferguson  who is sued in his official

capacity only,  and  City of New Orleans Mayor LaToya Cantrell  sued their official capacity

as chief executive officer of the City of  New Orleans.


## COUNT I

1-6.  PETITIONER KARL VON DERHAAR alleges and realleges Paragraphs l through 6 as

Paragraphs 1 through 6 of this Count, with the same force and effect as if fully set forth herein.

7.   PETITIONER  KARL VON DERHAAR was employed as a Criminalist at the New Orleans

Police Department where his principal duties were to analyze samples, particularly drug

samples, in the New Orleans Police Department Crime Lab.

8.   During his employment as a Criminalist at the New Orleans Police Department Crime Lab,

PETITIONER  KARL VON DERHARR routinely voiced concerns about the adequacy and

safety of the tests he was ordered to perform.

9. Specifically, PETITIONER  KARL VON DERHARR reported to his supervisors that the ventilation in the lab was substandard and posed a great safety hazard to the analysts in the lab. In fact, other analysts as well as himself suffered from respiratory illness while employed at the lab. Additionally, PETITIONER complained that the cleanliness and sterilization of the lab was compromised as their protocols for waste disposal were well below standard. For example, analysts were ordered to throw drug testing waste material into the normal trash. This waste material included dangerous chemicals and illicit substances. DEFENDANT Sgt. Stalbert even denied PETITIONER's simple request for a broomstick to be able to sweep up dropped drug testing material.

10. Each time PETITIONER reported to his supervisor DEFENDANT Sgt. Stalbert about the substandard conditions of the crime lab, DEFENDANT Sgt. Stalbert would repeatedly retaliate against PETITIONER by reprimanding him at work in front of his colleagues and by increasing the amount of arbitrary tasks and paperwork PETITIONER needed to perform in order to keep his job, without ever remedying the basis of PETITIONER's complaints.

11. PETITIONER's concerns implicated the efficacy, accuracy, and safety of the tests being performed.

12. Additionally, PETITIONER VON DERHAAR became concerned that the New Orleans Police Department Crime Lab's equipment was not sophisticated enough to adequately and accurately test drug samples. Namely, PETITIONER VON DERHAAR noticed that the equipment and tests performed at the New Orleans Police Department Crime Lab could not differentiate between marijuana, an illicit substance under the laws of this state which contains 0.4% of tetrahydrocannabinol (THC) content, and hemp, which contains 0.3% or less THC content and is therefore a *legal* substance under the laws of this state. Furthermore,

PETITIONER'S supervisor, Defendant Michael Stalbert, ordered all criminalists to cease

performing GC/MS confirmatory tests on drug samples, which would ensure that the testing

performed was accurate.  (See Exhibits P-1 and Exhibit P-2 attached hereto and made a part

hereof)

13. PETITIONER VON DERHAAR voiced his concerns of the inadequate and inaccurate

testing to his immediate supervisors including Jamie Alexander, the QA/QC Manager.

Written e-mails show that PETITIONER'S concerns did in fact reach DEFENDANT Sgt.

Stalbert and DEFENDANT Kim Williams.  (Exhibits P-1, Exhibit P-2) PETITIONER'S

reports  of false testing fell on deaf ears. PETITIONER expressed concern that criminal

defendants would be falsely convicted of marijuana offenses when the preliminary two tests

were not confirmatory tests. This meant the substances used in criminal proceedings would

not be confirmed positively as marijuana because the two preliminary tests being used by the

N.O.P.D. Crime Lab could not distinguish hemp, which was a legal substance, from

marijuana.  This would lead to innocent persons being convicted of marijuana criminal

misdemeanor and felony offenses. PETITIONER was not used to testify in criminal

proceedings after PETITIONER'S complaints and other Crime Law employees testified the

test results were accurate for marijuana when the preliminary tests were the only ones run

and could not exclude hemp. (See Exhibit P-3)

14. PETITIONER  KARL VON DERHAAR'S concerns are of particular relevance as the results

of testing performed by PETITIONER and his colleagues often made the basis of criminal

drug convictions brought against a large sum of people in the City of New Orleans.

15. PETITIONER  KARL VON DERHAAR'S immediate supervisors soon afterward announced that all employees would need to undergo mandatory drug testing as a condition of employment.

16. The drug testing of employees would presumably be performed under the same substandard methods that PETITIONER KARL VON DERHAAR had complained of.

17. PETITIONER KARL VON DERHAAR made his concerns of the substandard and inaccurate drug testing well known to his supervisors and colleagues.

18. On September 2, 2020, after his concerns had been ignored and PETITIONER had experienced guilt and anguish over the inadequate testing being performed, PETITIONER requested from DEFENDANT Sgt. Stalbert to be placed on leave without pay ("LWOP").

19. In response, on the next day, September 3, 2020, DEFENDANTS Stalbert and Williams took it upon themselves to conduct a "wellness check" at PETITIONER'S residence. To support their "wellness check", DEFENDANTS Stalbert and Williams reported that PETITIONER had been "displaying erratic behavior" in the weeks prior. (Exhibit P-4 complaint and Petitioner's exoneration after investigation in Exhibit P-5)

20. DEFENDANTS' illegal entry into PETITIONER's residence is plainly caught on DEFENDANTS' body-worn cameras. (Exhibit  P-6 filed as a  manual attachment)

21. When DEFENDANTS Stalbert and Williams arrived at PETITIONER'S residence,  Sgt. Stalbert put his foot in the PETITIONER'S  apartment front door and DEFENDANTS Stalbert, Williams and Khalid Watson forced their way inside PETITIONER'S residence, with PETITIONER in his underwear,  in front of his child, without a warrant and without probable cause, dressed in full N.O.P.D. uniform with three N.O.P.D. officers with guns, tasers and handcuffs and told PETITIONER that he was being forced to go with them to

submit to a drug test.  PETITIONER was on sick leave and not on duty. DEFENDANTS Stalbert and Williams told PETITIONER that he had been "clocked in" back at the station so that it would appear that he was on duty at the time of their "wellness check."

22. Specifically, when DEFENDANTS Stalbert and Williams arrived at PETITIONER'S residence, PETITIONER answered the door but indicated that he did not wish to speak with the DEFENDANTS Stalbert and Williams. DEFENDANT Stalbert informed him that he had no choice and he had to speak with them and to ride in a police car after being frisked and then placed in a police car with his cell phone taken away from him.

23. DEFENDANT Sgt. Stalbert told PETITIONER at his front door, **"this is a wellness check and we are coming  in"** [sic] while entering into PETITIONER's residence over his objections.

24. Once inside, DEFENDANT Sgt. Stalbert tried to get PETITIONER to go outside to talk. PETITIONER was at home, indecently dressed for company in his underwear, with his girlfriend and young child who was in fear hiding under a blanket in the video Exh. P-5 also in the home. PETITIONER advised that he did not wish to speak to them and did not want to go with them.

25. DEFENDANT Kim Williams then advised that PETITIONER needed to be immediately and compulsorily and had no choice but to be brought in a marked N.O.P.D. police unit to P.I.B. in Benson Tower in New Orleans, La. and said that P.I.B. needed to "speak with him about different things that's been going on." DEFENDANT Williams then advised to PETITIONER that he could speak to P.I.B. about his concerns regarding the crime lab while he was there.

26. PETITIONER asked DEFENDANTS Stalbert and Williams if he was under arrest. DEFENDANT Williams advised that he was not under arrest but that he still had to go with them to speak to P.I.B. PETITIONER was told that he had no choice but to go with the three fully armed N.O.P.D. officers them and do as they asked, even though PETITIONER was not under arrest and there was no probable cause for the DEFENDANT officers to force their way into PETITIONER's home as they had.

27. DEFENDANT Williams placed her cell phone on speaker and PETITIONER could hear a voice, later identified as Lt. Darryl Watson, say, "do a urinalysis test and he's being ordered. Put him on the clock, he's being ordered to come into work and take his test." DEFENDANT Lt. Darryl Watson acted with other DEFENDANTS who all knew PETITIONER was not on duty and with malice DEFENDANTS acted under color of law to falsify time records as a false pretextual excuse to proceed with the humiliation, drug testing and arrest of PETITIONER who was a civilian citizen.

28. DEFENDANT Sgt. Stalbert then stated to PETITIONER, **"you are now on the clock, you're getting paid, you're being ordered to take a drug test and blood/alcohol/urinalysis test at PIB. The reason why we are doing this is because of your behavior and we are concerned that you are not harming yourself and your behavior and the acts that you have been exhibiting have been unique and not of your normal character"** [sic].

29. PETITIONER then asked, **"If I quit right now, do I have to come with you sir?"** DEFENDANT Lt. Williams replied in the affirmative and stated that "**you need to go up and sign the paperwork.**" DEFENDANT Sgt. Stalbert then stated, **"It's P.I.B., you still gotta go to PIB."** PETITIONER asked if he could bring his cellphone illegally seized from

PETITIONER with him and DEFENDANT Sgt. Williams replied in the negative stating, "you not gonna need it."  DEFENDANTS knew their actions were illegal, unconstitutional, in violation of law and acted with malice.

30. PETITIONER was then escorted to Officer Watson's unit and transported to PIB despite not being under arrest and despite stating that he did not wish to go with them. PETITIONER was falsely arrested, falsely imprisoned, humiliated and the illegal entry into his residence and  illegal seizing of PETITIONER'S cell phone was in violation of the 4th Amendment and 14th Amendment of the U.S. Constitution.

31. At the Public Integrity Bureau, PETITIONER was escorted to the Toxicology and Drug Analysis Laboratory. PETITIONER and Sgt. Lawrence Jones entered a room at the testing facility while DEFENDANTS Williams and Watson sat in the waiting area. At that time, DEFENDANT Williams ordered Officer Watson to deactivate his body-worn camera.

32. Official paperwork falsely created by DEFENDANTS Williams and Stalbert documenting the incident lists reasonable suspicion for a drug/alcohol test for the City of New Orleans as the basis for their entry into PETITIONER'S home, and not a "wellness check" at all.

33. By means of their unlawful detention of PETITIONER KARL VON DERHAAR, DEFENDANTS intentionally, or with deliberate indifference and callous disregard of PETITIONER  KARL VON DERHAAR's rights, deprived  PETITIONER  KARL VON DERHAAR of his right to be free of unreasonable searches and seizures, in violation of the Fourth and Fourteenth Amendments to the Constitution of the United States and 42 U.S.C. § 1983.

**34.** PETITIONER also suffered damages under the Constitution of the State of Louisiana 4th and

14th Amendments and La.  Civil Code Article 2315 and for state law violations by

DEFENDANTS for kidnapping and false arrest.

**35.** PETITIONER itemizes his damages as follows:

ILLEGAL SEIZURE

ILLEGAL ENTRY

KIDNAPPING

FALSE ARREST

HUMILIATION

PAST MENTAL ANGUISH

FUTURE MENTAL ANGUISH

PUNITIVE DAMAGES AGAINST INDIVIDUAL OFFICER DEFENDANTS

ATTORNEY FEES AND COSTS

JUDICIAL INTEREST

**36.** WHEREFORE,  PETITIONER VON DERHAR Karl Von Derhaar demands judgment

against DEFENDANTS Michael A. Stalbert, Lawrence Jones, Khalid Watson, and Kim

Williams, N.O.P.D.  Superintendent Shaun Ferguson and the City of New Orleans jointly and

severally, for compensatory damages, and further demands judgment against each of said

defendants, jointly and severally, for punitive damages, plus the costs of this action and such

other relief as to this Court seems just, proper, and equitable.

**37.** Plaintiff hereby repeats its demand for a trial by jury as to all claims.


      **Wherefore**, Plaintiff respectfully requests compensatory damages as to all defendants,

punitive damages from Defendant police officers, reasonable attorney's fees and costs as to all

Defendants, and such other and further relief as may appear just and appropriate.

                                    Respectfully Submitted,

                                    *S Glenn C. McGovern*

                                    _____
                                    Glenn C. McGovern (LBA # 9321)
                                    Callan Johns (LBA #.  38788  )
                                    Peyton Bowman (LBA#. 38679)
                                    The Law Office of Glenn McGovern
                                    Corp. Attorneys
                                    2901 Division Street, Suite 201
                                    Metairie, Louisiana, 70002
                                    Mailing Address:
                                    P.O. Box 516
                                    Metairie, LA. 70004
                                    Phone: (504)456-3610
                                    Facsimile: (504)456-3611
                                    Glenn@glennmcgovern.com


      CLERK PLEASE PREPARE SERVICES FOR:


1. CITY OF NEW ORLEANS thru Hon. Mayor LaToya Cantrell
   City Hall Mayor's Office
   1300 Perdido St
   2nd Floor
   New Orleans, LA 70112


2. MICHAEL STALBERT
   New Orleans Police Crime Lab
   2219 Lakeshore Drive
   New Orleans, La.

3. LAWRENCE JONES
   New Orleans Police 5th District

3900 N Claiborne Ave, New Orleans, LA 70117

4. KIM WILLIAMS
New Orleans Police Crime Lab
2219 Lakeshore Drive
New Orleans, La.

5. SUPERINTENDANT SHAUN FERGUSON, NEW ORLEANS POLICE DEPT.
715 South Broad St
New Orleans, LA 70119

6. DARRYL WATSON
Third District Station NOPD
4650 Paris Ave, New Orleans, LA 70122

7. KAHALID WATSON
Third District Station NOPD
4650 Paris Ave, New Orleans, LA 70122