UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

KARL VON DERHAAR                          CIVIL ACTION

VERSUS                                    NO. 21-1653

MICHAEL STALBERT, ET AL.                  SECTION "B"(5)

ORDER AND REASONS

Before the Court are defendant Lawrence Jones' motion for summary judgment (Rec. Doc. 76), plaintiff Karl Von Derhaar's response in opposition (Rec. Doc. 121), defendants' reply (Rec. Doc. 173), defendant Khalid Watson's motion for summary judgment (Rec. Doc. 98), plaintiff's response in opposition (Rec. Doc. 138), defendant's reply (Rec. Doc. 174), defendant Michael Stalbert's motion for summary judgment (Rec. Doc. 100), plaintiff's response in opposition (Rec. Doc. 139), defendant's reply (Rec. Doc. 191), defendant Kim Williams' motion for summary judgment (Rec. Doc. 107), and plaintiff's response in opposition (Rec. Doc. 141).

For the reasons discussed below,

**IT IS ORDERED** that Michael Stalbert's motion for summary judgment (Rec. Doc. 100) is **DENIED** in rejection of Stalbert's qualified immunity defense. **IT IS FURTHER ORDERED** that Michael Stalbert's motion for summary judgment (Rec. Doc. 100) on the issue of punitive damages is **DENIED**.

**IT IS ORDERED** that Kim Williams' motion for summary judgment invoking qualified immunity (Rec. Doc. 107) is **GRANTED** only as to

1

the alleged unlawful entry claim. **IT IS FURTHER ORDERED** that Kim Williams' motion for summary judgment invoking qualified immunity (Rec. Doc. 107) is **DENIED** in recognition of the alleged unlawful seizure claim. **IT IS FURTHER ORDERED** that Defendant Williams' motion for summary judgment (Rec. Doc. 107) on the issue of punitive damages is **GRANTED,** dismissing the punitive damages claim against Williams.

IT IS ORDERED that Khalid Watson's motion for summary judgment invoking qualified immunity (Rec. Doc. 98) is **GRANTED** as to the alleged unlawful entry claim. **IT IS FURTHER ORDERED** that Khalid Watson's motion for summary judgment invoking qualified immunity (Rec. Doc. 98) is **DENIED** as to the alleged unlawful seizure claim.

**IT IS ORDERED** that Lawrence Jones' motion for summary judgment (Rec. Doc. 76) is **GRANTED,** dismissing plaintiff's claims against defendant Jones in his individual capacity. **IT IS FURTHER ORDERED** that Lawrence Jones' motion for judgment on the pleadings (Rec. Doc. 76) is **DISMISSED as moot** in view of the Court's decision to grant Jones' motion for summary judgment (Rec. Doc. 76).

## I.   FACTS AND PROCEDURAL HISTORY

This case arises from an alleged illegal search and seizure. Plaintiff Karl Von Derhaar is an adult resident of Louisiana who was employed as a criminalist at the New Orleans Police Department ("NOPD"). Rec. Doc. 53 at 2-3. While working at the NOPD, plaintiff

became increasingly concerned about the efficacy, accuracy, and safety of the crime lab's drug tests. *Id.* at 4. Specifically, plaintiff believed that the NOPD's equipment and tests could not differentiate between marijuana, an illicit substance in Louisiana, and hemp, a legal one. *Id.* Plaintiff was also concerned that criminalists were no longer performing confirmatory tests on drug samples, which ensured that testing is accurate. *Id.* at 5. Because these drug tests are routinely used as the basis for criminal drug convictions in New Orleans, plaintiff feared that inaccurate tests could lead to innocent persons being convicted of marijuana drug crimes. *Id.*

Plaintiff voiced his concerns to his immediate supervisor, Jamie Alexander, the QC Manager. *Id.* Thereafter, defendant Sergeant Michael Stalbert, NOPD crime lab supervisor and drug chemistry and crime technician, and defendant Kim Williams, NOPD crime lab supervisor, learned of plaintiff's concerns. *Id.* at 2, 5. The crime lab supervisors allegedly ignored plaintiff's concerns, and soon after, mandated that employees undergo drug testing as a condition of employment, using the drug testing methods plaintiff claims to be substandard. *Id.* at 5-6.

On September 2, 2020, plaintiff asked defendant Sergeant Stalbert to be placed on leave without pay. *Id.* at 6. The next day, defendants Stalbert, Williams, and Khalid Watson, an officer of the Third District of the NOPD, arrived at plaintiff's residence

purportedly to conduct a "wellness check," claiming that plaintiff had been "displaying erratic behavior" in the weeks prior. *Id.* According to plaintiff, defendants Stalbert, Williams, and Watson "forced their way inside [plaintiff's] residence" dressed in full NOPD uniform, in front of plaintiff's child, while plaintiff was in his underwear, and without a warrant or probable cause. *Id.* Defendants told plaintiff that he must go with them to submit to a drug test, even though allegedly he was on sick leave and not on duty. *Id.*

Plaintiff told defendants he did not want to speak with them nor go with them anywhere, but defendant Williams insisted plaintiff must go to the Public Integrity Bureau ("PIB"), while defendants maintained possession of his cell phone. *Id.* at 6-7. Plaintiff inquired as to whether he was under arrest and defendants admitted he was not, but that he still must go to the PIB with them. *Id.* at 7. When plaintiff asked for his cell phone, defendant Williams replied, "you not gonna need it." *Id.* at 8. At one point, plaintiff overheard defendant Williams' phone call with Lieutenant Darryl Watson, another supervisor of the NOPD crime lab, where Darryl Watson stated "do a urinalysis test and he's being ordered. Put him on the clock, he's being ordered to come into work and take his test." *Id.* Defendant Stalbert then said to plaintiff,

> you are now on the clock, you're getting paid, you're being ordered to take a drug test and blood/alcohol/urinalysis test at PIB. The reason we are

doing this is because of your behavior and we are concerned that you are harming yourself and your behavior and the acts that you have been exhibiting have been unique and not of your normal character.

*Id.* Plaintiff asked "if I quit right, now, do I have to come with you sir?" and defendant Williams replied affirmatively stating that plaintiff needed "to go up and sign the paperwork." *Id.* Plaintiff was then transported to the toxicology and drug analysis laboratory at the PIB. *Id.* at 8-9.

While at P.I.B., plaintiff and defendant Jones entered a room at the testing facility while defendants Williams and Watson sat in the waiting area. *Id.* at 9. Plaintiff avers he informed defendant Jones that he was taken illegally from his home and he did not want to do a drug test. Rec. Docs. 141 at 5. However, defendant Jones informed plaintiff that because he worked for the city, plaintiff had to take the drug test and he could not refuse. *Id.* plaintiff then asked defendant Jones if he would still be required to submit to a drug test if he resigned from his position, defendant Jones informed plaintiff he would not be required if he resigned, and plaintiff submitted his resignation. *Id.*

To address this incident, plaintiff and defendant City of New Orleans entered into a written settlement agreement on June 16, 2021, in which the City agreed to pay plaintiff 9.5 months of past wages for the time period of September 3, 2020 through June 15, 2021, totaling $25,493.25. Rec. Doc. 53 at 9-10. To this date,

defendant City of New Orleans has not paid the agreed upon settlement, which was due on or about June 16, 2021. *Id.* at 10.

Plaintiff's amended complaint alleges defendants violated the Fourth and Fourteenth Amendments of the Constitution and 42 U.S.C. § 1983 by conducting an unlawful arrest, search, and seizure. Rec. Doc. 1 at 9. Plaintiff also alleges that defendants violated Louisiana Civil Code Article 2315 and other Louisiana state laws related to kidnapping and false arrest. *Id.* at 10. Accordingly, plaintiff claims defendants are liable for general and special damages and attorney's fees and costs. *Id.*

## II.   <u>LEGAL STANDARDS</u>

### A. Qualified Immunity

"Section 1983 enables persons who have been deprived of any rights, privileges, or immunities secured by the Constitution and laws of the United States by the actions of a person or entity operating under color of state law to seek redress from those state actors responsible for the deprivations." *Orr v. Copeland*, 844 F.3d 484, 491-92 (5th Cir. 2016) (citing 42 U.S.C. § 1983) (internal citations omitted). However, qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Courts consider two prongs to determine whether a defendant is entitled

to qualified immunity, deciding (1) whether the plaintiff has alleged a violation of a constitutional right and, if so, (2) whether that right was clearly established at the time of the defendant's alleged misconduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Following *Pearson v. Callahan*, the Supreme Court permitted district courts to approach these inquiries in any order. 555 U.S. 223, 236 (2009).

"If the answer to either of the two questions is 'no,' qualified immunity applies and the government official is immune from suit." *Castera Robles v. Cayton*, 454 F. App'x 373, 377 (5th Cir. 2011); *see also Hampton v. Oktibbeha Cnty. Sheriff Dep't*, 480 F.3d 358, 363 (5th Cir. 2007) ("If the plaintiff fails to state a constitutional claim or if the defendant's conduct was objectively reasonable under clearly established law, then the government official is entitled to qualified immunity."). "The plaintiff bears the burden of overcoming the qualified immunity defense." *Castera Robles*, 454 F. App'x at 377. "The relevant, dispositive inquiry is whether it would be clear to a reasonable officer that the conduct was unlawful in the situation he confronted." *Katz*, 533 U.S. at 194-95.

**B. Summary Judgment & Qualified Immunity**

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)); *see also TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002). A genuine issue of material fact exists if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court should view all facts and evidence in the light most favorable to the non-moving party. *United Fire & Cas. Co. v. Hixson Bros. Inc.*, 453 F.3d 283, 285 (5th Cir. 2006). Mere conclusory allegations are insufficient to defeat summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).

"Once the moving party has demonstrated the absence of a material fact issue, the non-moving party must 'go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial.'" *McCarty v. Hillstone Rest. Grp., Inc.*, 864 F.3d 354, 357 (5th Cir. 2017) (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)). However, "where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994).

"This court will not assume in the absence of any proof that the nonmoving party could or would prove the necessary facts, and will grant summary judgment in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the non-movant." *McCarty* 864 F.3d at 358 (internal quotations omitted).

However, this changes when qualified immunity is implicated. *Joseph on behalf of Est. of Joseph v. Bartlett*, 981 F.3d 319, 329 (5th Cir. 2020). "When a public official makes 'a good-faith assertion of qualified immunity,' that 'alters the usual summary-judgment burden of proof, shifting it to the **plaintiff** to show that the defense is not available'" *Id.* at 329-30 (citing *Orr v. Copeland*, 844 F.3d 484, 490 (5th Cir. 2016))(emphasis added). "Once the burden is on the plaintiff, things briefly sound familiar again: The plaintiff must show that there is a genuine dispute of material fact and that a jury could return a verdict entitling the plaintiff to relief for a constitutional injury." *Id.* at 330.

"[T]o overcome qualified immunity, the plaintiff's version of those disputed facts must also constitute a violation of clearly established law." *Id.* Plaintiff may "identify a case" or a "body of relevant case law" to establish precedent "clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Id.*; *see also D.C. v. Wesby*, 199 L. Ed. 2d 453, 590 (2018). "While there does not

9

have to be 'a case directly on point,' existing precedent must
place the lawfulness of the particular arrest 'beyond debate.'"
*Joseph* F.3d at 330 (citing *Wesby*, 199 L. Ed. 2d at 591). "A court
decides whether summary judgment is appropriate by viewing the
facts in the light most favorable to the nonmoving party and
drawing all reasonable inferences in its favor" before
"determining whether the plaintiff can prove a constitutional
violation [] that was clearly established []." *Id.* (citing *Deville
v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009)).

## C. The Fourth and Fourteenth Amendments

The Fourth Amendment protects "[t]he right of the people to
be secure in their persons, houses, papers, and effects, against
unreasonable searches and seizures." U.S. CONST. AMEND. IV.
"[S]earches and seizures inside a home without a warrant are
presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586
(1980). However, there are "a few specifically established and
well-delineated exceptions" *Katz v. United States*, 389 U.S. 347,
357 (1967).

A Fourth Amendment violation requires demonstrating "a
subjective expectation of privacy in the object of the challenged
search" and that "society is willing to recognize that expectation
as reasonable." *California v. Ciraolo*, 476 U.S. 207, 211 (1986)
(citing *Katz*, 389 U.S. at 361 (Harlan, J., concurring)). "A
'search' occurs when an expectation of privacy that society is

prepared to consider reasonable is infringed." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). "Under the Fourth Amendment, a seizure occurs when, under the totality of the circumstances, a reasonable person would have thought he was not free to leave." *Keller v. Fleming*, 952 F.3d 216, 222 (5th Cir. 2020) (citing *Michigan v. Chesternut*, 486 U.S. 567, 572 (1988)). "[W]henever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person." *Terry v. Ohio*, 392 U.S. 1, 16 (1968). In any event, "the application of the Fourth Amendment depends on whether the person invoking its protection can claim a 'justifiable,' a 'reasonable,' or 'legitimate expectation of privacy' that has been invaded by government action." *Smith v. Maryland*, 442 U.S. 735, 740 (1979).

The Due Process Clause of the Fourteenth Amendment provides "[n]o State shall . . . deprive any person of life liberty, or property, without due process of law." U.S. CONST. AMEND. XIV, § 1.

### III. <u>ANALYSIS</u>

**A. Defendant Michael Stalbert's motion for summary judgment (Rec. Doc. 100)**

**1. Qualified Immunity**

**a. Has there been a constitutional violation?**

The Court first considers whether plaintiff can sustain his burden by proving defendant Stalbert violated his Fourth Amendment constitutional rights, to halt the qualified immunity defense.

11

Responding to defendant's motion for summary judgment invoking qualified immunity (Rec. Doc. 100), the Court finds that plaintiff met his burden of establishing that a reasonable trier of fact could find that a constitutional violation was committed by this officer.

Defendant Stalbert asserts "he had an employee who had been acting erratically and then cut off all contact, claiming he was 'stressed.'" Rec. Doc. 100 at 18. After conveying his concern to superiors, he went to plaintiff's apartment and knocked but received no answer. *Id.* The following day, Stalbert received instructions to join defendant Williams, defendant Watson who was wearing a body camera, and an EMS unit on standby to perform another wellness check on plaintiff and "make sure that those inside the house were also alright." *Id.* at 18-19.

While conducting the purported wellness check, plaintiff opened the door partially and clarified he did not want to speak to the officer. *Id.* at 19. Even so, Stalbert told plaintiff he needed to put on pants and come outside before asking ". . . and we are coming in, okay?" *Id.* Crucially, Stalbert avers he believed he had either permission or exigent circumstances to enter the apartment, and plaintiff never asked him to leave. *Id.* Plaintiff presents a different narrative. As he tells it, immediately after defendant Stalbert said ". . . and we are coming in, okay?", plaintiff merely repeated what defendant Stalbert said in apparent

12

disbelief as Stalbert "forces his way through the door." Rec. Doc. 139 at 14. The discrepancy of whether defendant Stalbert had permission to enter the apartment, alone, is a genuinely disputed material fact and requires denial of Stalbert's motion for summary judgment.

Continuing on, the law recognizes exigent circumstances as an exception to the Fourth Amendment warrant requirement, reviewed on a "case-by-case-basis." *Lange v. California*, 141 S. Ct. 2011, 2018 (2021). For example, "law enforcement officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury." *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006). The exception may apply if there is truly a "now or never situation" where an officer has "no time to secure a warrant." *Lange*, 141 S. Ct. at 2018 (2021). Here, even if Stalbert was conducting a wellness check, the Court finds it concerning that Stalbert did not elaborate on the how plaintiff acted "erratically." *See generally* Rec. Doc. 100.

Moreover, the following factual circumstances do not rise to the standard of an exigency. Once Stalbert saw that plaintiff, plaintiff's girlfriend, and young child were alive and well, and no additional facts gave rise to a true exigency, that should have concluded the wellness check. It certainly did not permit Stalbert to enter the apartment under the guise of an exigency. The Fifth

Circuit has clarified that exigencies include situations where: police responded to reports of an intoxicated and belligerent person issuing threats to a man and his child; police responding to suicidal episodes caused by bipolar disorder and schizophrenia; or a social worker investigating a report of medical neglect from a child's physician pursuant to state law mandates. *See e.g. United States v. York*, 895 F.2d 1026, 1030 (5th Cir. 1990); *see also e.g. Rockwell v. Brown*, 664 F.3d 985, 996 (5th Cir. 2011); *see also e.g. Wernecke v. Garcia*, 591 F.3d 386, 397 (5th Cir. 2009). Accordingly, the Court concludes that because the welfare check did not allow Stalbert to enter, and because no exigency existed that permitted defendant to enter the residence, the search was presumptively unreasonable and a reasonable jury, viewing the disputed facts most favorably to the nonmoving party, could find a constitutional violation is present.

Next, plaintiff also avers an illegal seizure occurred when Stalbert and the other officers demanded plaintiff step out of his apartment; informed him he was being put on the clock to be taken to P.I.B. for a drug test; plaintiff was placed in a NOPD vehicle to be transported to P.I.B.; plaintiff was not allowed to bring his cell phone; and plaintiff was in-fact brought to P.I.B. for a drug test. Rec. Doc. 139 at 15-16.

Plaintiff accurately notes: "There are three types of encounters between police and individuals, each with different

ramifications under the Fourth Amendment." *United States v. Cooper*, 43 F.3d 140, 145 (5th Cir. 1995). They include a consensual encounter, which is not a seizure (*Cooper*, 43 F.3d at 145); a limited investigative *Terry* stop and frisk requiring reasonable suspicion (*Terry*, 392 U.S. at 16 (1968)); or an arrest that requires probable cause (*Cooper*, 43 F.3d at 146).

Here, plaintiff asserts he did not consent to the NOPD officers entering his home or detaining him; he was told he was not under arrest; and the officers have not presented an articulable suspicion that plaintiff committed a crime or was about to commit a crime. Rec. Doc. 139 at 16. Nevertheless, he was brought into P.I.B.—a reasonable jury could conclude Von Derhaar was seized. Stalbert also proffers an unavailing explanation for these events, comparing this warrantless seizure to merely an order by a supervisor to an employee, but omits that it's for the purposes of a drug test. Perhaps plaintiff could be ordered to provide a urine sample for drug testing purposes, but a reasonable jury could find that hauling plaintiff to P.I.B. against his wishes goes too far and thus, a reasonable trier of fact could find that an illegal seizure occurred. Accordingly, without a valid exception, the seizure is presumptively unreasonable.

### b. Was the law clearly established?

The second step of the qualified immunity inquiry demands plaintiff demonstrate there was a clearly established right at the

time of the challenged action. Here, plaintiff must establish the same for the alleged entry and seizure.

With respect to the alleged illegal entry, plaintiff points to various authority to establish Stalbert violated a clearly established right. Specifically, in *Payton v. New York*, the Supreme Court clarified "the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." 445 U.S. 573, 590 (1980). "[A]ny physical invasion of the structure of the home, 'by even a fraction of an inch,' was too much." *Kyllo v. United States*, 533 U.S. 27, 37 (2001) (citing *Silverman v. United States*, 365 U.S. 505, 512 (1961)). "The government does not need a warrant if it receives: (i) consent; (ii) that is voluntarily given; (iii) by someone with actual or apparent authority; and (iv) the search does not exceed the scope of the consent received." *United States v. Staggers*, 961 F.3d 745, 757 (5th Cir.), *cert. denied*, 208 L. Ed. 2d 103, 141 S. Ct. 388 (2020). Because there are genuine factual disputes as to whether the officer committed an unlawful entry into plaintiff's home to conduct a wellness check, and because the law was clearly established that an officer's unlawful entry into a residence is unconstitutional, qualified immunity is inappropriate. *Compare Smith v. Lee*, No. CV 19-1261, 2022 WL 1207145, at *5 (W.D. La. Apr. 22, 2022).

Plaintiff has also satisfied his burden of establishing the alleged seizure violated clearly established law. As elucidated above, Fifth Circuit authority recognizes three types of encounters between government actors and individuals: consensual encounters, limited *Terry* stop-and-frisks, and arrests. *Cooper*, 43 F.3d at 145 (5th Cir. 1995). Again, because plaintiff avers he did not consent to armed NOPD officers entering his home or detaining him, he was told he was not under arrest, and the officers did not and have not presented any articulable suspicion that plaintiff committed a crime or was about to commit a crime, the Court finds that a reasonable trier of fact could find that clearly established law was violated. Rec. Doc. 139 at 16.

Therefore, Stalbert's motion for summary judgment (Rec. Doc. 100) is denied in rejection of his qualified immunity

**2. Punitive and exemplary damages**

Stalbert moves for summary judgment on the issue of punitive or exemplary damages. Rec. Doc. 100 at 22. Punitive damages are only awarded if "the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of other." *Smith v. Wade*, 461 U.S. 30, 56 (1983). "[U]nlike compensatory damages, punitive damages are never available as a matter of right, no matter how egregious the defendant's conduct may be." *Hale v. Fish*,

17

899 F.2d 390, 404 (5th Cir. 1990). "The decision to award or deny punitive damages is left to the finder of fact" and is reviewed on appeal with great deference. *Heaney v. Roberts*, 846 F.3d 795, 803 (5th Cir. 2017). "The award of punitive damages is a harsh remedy and normally is not favored by law." *Id.* (citing *Creamer v. Porter*, 754 F.2d 1311, 1319 (5th Cir. 1985)).[1]

The Court is persuaded by the above review of a presumptive Fourth Amendment violation, a reasonable jury could infer the requisite level of "evil motive or intent" or recklessness necessary to sustain a claim for punitive damages against Stalbert. *Smith*, 461 U.S. at 56.

## B. Defendant Kim Williams' motion for summary judgment (Rec. Doc. 107)

### 1. Qualified Immunity

#### a. Has there been a constitutional violation?

The Court first considers whether plaintiff can sustain his burden by proving Williams violated his Fourth Amendment

---

[1] Plaintiff's insistence that "evaluations of motive and intent are generally inappropriate on a motion for summary judgment" is unavailing as the cited phrase is part of a larger parenthetical quotation that must be read in context, and the Fifth Circuit ultimately upheld the district court's dismissal of punitive damages. Rec. Doc. 139 at 17; *see also Heaney*, 846 F.3d at 803.

constitutional rights. *Katz*, 533 U.S. at 201. Here, plaintiff met his burden of establishing a reasonable trier of fact could find that Williams committed a constitutional violation, but only as to the seizure claim.

Plaintiff Von Derhaar cannot meet his burden of establishing defendant Kim Williams violated his Fourth Amendment rights as to the alleged illegal entry. As a threshold matter, plaintiff relies on a Fifth Circuit footnote quotation in *Amador v. Vasquez*: "Because it is alleged that the officers acted in unison, we need not separately address the qualified immunity analysis for each officer." 961 F.3d 721, 727 n.5 (5th Cir. 2020), *cert. denied*, 209 L. Ed. 2d 252, 141 S. Ct. 1513 (2021). Nevertheless, the Fifth Circuit has "consistently examined the actions of defendants individually in the qualified immunity context." *Meadours v. Ermel*, 483 F.3d 417, 421 (5th Cir. 2007) (noting "the district court's decision to consider the officers' actions collectively extends the holding of *Jacobs* beyond what the prudence and case law allows."). The Court thus considers defendant Williams' alleged actions, individually.

It is undisputed that Kim Williams did not physically enter the apartment building or encourage entry by others. Rec. Doc. 107 at 11-13. Plaintiff argues, without factual support, that Williams acted in unison with defendants Stalbert and Watson, particularly because "as the highest ranking officer at the scene . . .

[Williams] knew, or should have known, that it was illegal for any uniformed police officer to enter without his consent, even during a wellness check." Rec. Doc. 141 at 10. Plaintiff further contends Williams "had a duty, under NOPD policies, to stop them" but "failed to do so." *Id.* Even assuming this to be true, plaintiff has not provided any case law authority confirming Williams' affirmative duty, indicative that plaintiff has not met his burden on this purported Fourth Amendment violation. Consequently, the Court finds that a reasonable jury could not find that Williams committed a constitutional violation of unlawful entry as she did not physically enter the residence or encourage others to do so.

Next, plaintiff argues an illegal seizure occurred when Williams and the other officers demanded plaintiff step out of his apartment; informed plaintiff he was not under arrest; informed him he was being put on the clock to be taken to P.I.B. for a drug test; plaintiff was placed in a NOPD vehicle to be transported to P.I.B.; plaintiff was not allowed to bring his cell phone; and plaintiff was in-fact brought to P.I.B. for a drug test. Rec. Doc. 141 at 12-13.

As noted earlier, there are three types of encounters between police and individuals: consensual encounters, *Terry* stop-and-frisks requiring reasonable suspicion, and arrests requiring probable cause. *Cooper*, 43 F.3d at 145 (5th Cir. 1995). Considering plaintiff's contentions that he did not consent to going to P.I.B.,

20

was told he was not under arrest, and Williams did not demonstrate articulable suspicion or probable cause that plaintiff had committed a crime or was about to commit a crime, the actions of Williams appear to be an unlawful seizure. Rec. Doc. 141 at 13.

Further, when plaintiff asked if he could retrieve his cell phone from within his apartment, Williams told him "No, you're not going to need it." *Id.* at 12. Despite repeatedly asking for his phone, Williams consistently refused to allow him to retrieve the phone as he was led away from his home. *Id.* at 13.

The Court also finds Williams' argument that she "simply followed the instructions of her superiors" unpersuasive, largely because Williams was the specific individual who denied plaintiff an opportunity to retrieve his cell phone before being taken to P.I.B. Rec. Doc. 107 at 12. The factual record does not indicate any supervisors who ordered that plaintiff could not retrieve his cell phone. The seizure is presumptively unreasonable and a reasonable jury could find a constitutional violation.

**b. Was the law clearly established?**

The second step of the qualified immunity inquiry requires plaintiff demonstrate there was a clearly established right at the time of the challenged action. *Joseph on behalf of Est. of Joseph*, 981 F.3d at 330. As plaintiff could not meet his burden in the previous step as to the purported illegal entry, the Court only

considers whether the alleged unlawful seizure violated clearly established law.

Therefore, Williams' motion for summary judgment invoking qualified immunity (Rec. Doc. 107) is granted only as to the alleged unlawful entry claim.

A jury has sufficient evidence to find the seizure violated clearly established law. As noted above, there are three types of encounters between police and individuals. *Cooper*, 43 F.3d at 145 (5th Cir. 1995). Because plaintiff contends he did not provide consent, was told he was not under arrest, and Williams does not present articulable suspicion or probable cause, a reasonable trier of fact could find that clearly established law was violated. Rec. Doc. 141 at 13. In viewing the disputed facts in favor of the non-moving party, a reasonable person would not believe they had any ability to disregard the police in this situation and go about their business. *Keller*, 952 F.3d at 222 ("Under the Fourth Amendment, a seizure occurs when, under the totality of the circumstances, a reasonable person would have thought he was not free to leave.").

Thus, Kim Williams' motion for summary judgment invoking qualified immunity (Rec. Doc. 107) is denied in recognition of the alleged unlawful seizure claim.

**2. Punitive and exemplary damages**

Defendant Williams moves for summary judgment on the issue of punitive or exemplary damages. Rec. Doc. 107 at 13. As clarified prior, punitive damages are a discretionary remedy, only appropriate where "the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of other." *Smith v. Wade*, 461 U.S. 30, 56 (1983). What's more, "[t]he award of punitive damages is a harsh remedy and normally is not favored by law." *Id.* (citing *Creamer v. Porter*, 754 F.2d 1311, 1319 (5th Cir. 1985)).[2] Although the evidence may allow a reasonable jury to find a Fourth Amendment violation occurred as to the unlawful seizure only, a reasonable jury could not infer the required level of "evil motive or intent" or recklessness necessary to sustain a claim for punitive damages. *Smith*, 461 U.S. at 56.

**C. Defendant Khalid Watson's motion for summary judgment (Rec. Doc. 98)**

   **1. Qualified immunity**

---

[2] Plaintiff's verbatim insistence (to Rec. Doc. 139) that "evaluations of motive and intent are generally inappropriate on a motion for summary judgment" is again unavailing as the cited phrase is part of a larger parenthetical quotation that must be read in context, and the Fifth Circuit ultimately upheld the district court's dismissal of punitive damages. Rec. Doc. 141 at 14-16; see also *Heaney*, 846 F.3d at 803.

**a. Has there been a constitutional violation?**

The Court first considers whether plaintiff can sustain his burden by proving Khalid Watson violated his Fourth Amendment constitutional rights. *Katz*, 533 U.S. at 201.

"[T]he Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." 445 U.S. at 590. "[A]ny physical invasion of the structure of the home, 'by even a fraction of an inch,' was too much." *Kyllo*, 533 U.S. at 37. Due to the similarities between how defendants Stalbert and Watson entered plaintiff's apartment, as elaborated above, a reasonable jury could find that Watson violated the Fourth Amendment once he stepped into plaintiff's home.

Nevertheless, Watson contends the wellness check was not of his investigation, and he was merely the officer responsible for videotaping the investigation with his body camera. Rec. Doc. 98 at 11. Due to his supportive and subordinate role, Watson believes Stalbert was the one who made the decision to enter the apartment; once Stalbert entered the apartment, "it was proper for [] Watson to also enter the apartment to capture the interaction." *Id.* at 11-12. The Court is persuaded by this argument.[3] When it comes to officers prospectively committing a constitutional violation under

---

[3] The Court is unpersuaded by Watson's exigency arguments for the reasons outlined above, in the analysis under Michael Stalbert.

orders issued by a superior, the Fifth Circuit[4] requires considering the reasonableness of the situation, particularly whether the officer responding to the superior had "ample time and reason to conclude he was carrying out an illegal act . . . by following [the superior's] order." *Heaney v. Roberts*, 846 F.3d 795, 804 (5th Cir. 2017). Relatedly, a subordinate officer may be entitled to qualified immunity if they "had no reason to know that he was violating [plaintiff's constitutional] rights by following [his superior's] order." *Id.*

Given the specific supportive and subordinate role Watson exercised in recording the interaction, and because a reasonable police officer could believe, as Watson, that he had to record the scene and all interactions with plaintiff as ordered by his supervisor, Watson's actions were reasonable under the time sensitive circumstances. Rec. Doc. 98 at 12. Watson further elaborated that he was not made privy to Stalbert's reasons for conducting the wellness check or for entering the apartment. *Id.* at 13. Instead, he "was simply informed by [defendant] Stalbert that he and [defendant] Williams were making a wellness check on [plaintiff], one of their criminologists." *Id.*

---

[4] Relying on out-of-circuit precedent, Watson urges the Court to "rely on the allegations of fellow police officers" when making a "probable cause determination." *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000). The Court declines defendant's invitation and instead chooses to remain within the Circuit, which permits a similar but more nuanced standard.

Next, because plaintiff asserts the same as he did with the other defendants, that he did not provide consent, he was told he was not under arrest, and defendants have not presented an articulable suspicion that he committed a crime or was about to commit a crime (Rec. Doc. 138 at 12), a reasonable jury could find there was an unlawful seizure.

Watson mischaracterizes the unlawful seizure as simply "driving a police employee into work for a Department-ordered drug test." Rec. Doc. 98 at 17. That reasoning clashes with his subsequent contention that he "patted down [plaintiff] before allowing him in the patrol unit." Rec. Doc. 98 at 17. Unlike the entry into plaintiff's apartment which could be attributed to following a superior's orders in the spur of the moment, Watson had ample time to consider that driving plaintiff to take a mandated drug test against his wishes, when he was not under arrest, and when no reasonable suspicion or probable cause was present transcends into what is acceptable. *Heaney*, 846 F.3d at 804. Accordingly, a reasonable trier of fact could find that Watson's actions in patting down plaintiff and driving him to P.I.B. could be conduct of an unlawful seizure in violation of the Fourth Amendment.

**b. Was the law clearly established?**

The second step of the qualified immunity inquiry demands plaintiff demonstrate there was a clearly established right at the

time of the challenged action. Because the Court found that Watson did not commit a constitutional violation in view of his role as a subordinate following a supervisor's orders in the spur of the moment, there is no need for the Court to consider whether there was a clearly established right as to an unlawful entry.

However, plaintiff satisfied his burden of establishing the alleged seizure violated clearly established law. Plaintiff avers he did not consent to NOPD officers entering his home or detaining him, he was told he was not under arrest, and the officers did not present any articulable suspicion that plaintiff committed a crime or was about to commit a crime. Rec. Doc. 139 at 16. A reasonable police officer and trier of fact could find the law was clearly established at the time of the alleged violation.

Watson's motion invoking qualified immunity (Rec. Doc. 98) is denied as to the alleged unlawful seizure claim.

**D. Defendant Lawrence Jones' motion for judgment on the pleadings and, in the alternative, motion for summary judgment (Rec. Doc. 76)**

Defendant Lawrence Jones filed a motion for judgment on the pleadings and, in the alternative, motion for summary judgment on qualified immunity (Rec. Doc. 76-1). As a threshold matter,

"[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). "If a court considers materials outside of the pleadings, the motion to dismiss must be treated as a motion for summary judgment under Rule 56(c)." *Id.; see also* Fed. R. Civ. Pro. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). Here, because defendant introduces exhibits, the Court considers the motion for summary judgment.

### 1. Summary judgment and qualified immunity

Considering Jones' motion for summary judgment (Rec. Doc. 76-1), plaintiff's response in opposition (Rec. Doc. 121), and defendant's reply (Rec. Doc. 173), the Court considers whether defendant Jones is entitled to the qualified immunity defense. This requires asking whether plaintiff alleged a violation of a constitutional right, and if so, whether that right was clearly established at the time of the defendant's alleged misconduct so that it would be clear to a reasonable officer that the conduct was unlawful. *Saucier*, 533 U.S. at 194-95, 201.

### a. Has there been a constitutional violation?

28

Plaintiff again mistakenly relies upon the Fifth Circuit's decision in *Amador v. Vasquez* to suggest defendant Jones is liable because all defendants acted in unison. 961 F.3d at 727 n.5. The Court disagrees. The Fifth Circuit has "consistently examined the actions of defendants individually in the qualified immunity context." *Meadours,* 483 F.3d at 421. Defendant Jones' actions must be considered individually.

Plaintiff points to an excerpt of his testimony, which suggests he told defendant Jones he refused to take the drug test. Rec. Doc. 121 at 12. Neither party disputes Jones informed plaintiff he had to take the drug test because he works for the NOPD. Rec. Docs. 76-1 at 7; 121 at 12. But, what transpires next is critical for Jones. Plaintiff admits that he asked "well, if I resign do I still have to do the drug test[?]" and Jones responded no. Rec. Doc. 121 at 12. Plaintiff then clarified he refused to take the drug test, he was required to sign that he refused the drug test, and was allowed to leave. *Id.*

Jones focuses on how he never went to plaintiff's home; did not frisk him; did not bring him to P.I.B. and emphasizes how plaintiff admits he has no proof about whether Jones knew: officers allegedly entered his home earlier without permission; plaintiff was placed in a police car; and plaintiff was allegedly frisked without his permission. Rec. Doc. 76-1 at 7. It is undisputed that plaintiff did not tell Jones the specifics concerning the situation

that led him to P.I.B. for a drug test. Rec. Doc. 173 at 3. Otherwise, the reasonableness inquiry could have shifted from the nonmoving party.

Accordingly, the Court finds that no reasonable trier of fact could conclude that Jones' actions were unreasonable or unconstitutional in view of the above undisputed facts.

**b. Was the law clearly established?**

Plaintiff's briefing recites the Supreme Court's standard for defining a clearly established right. Rec. Doc. 121 at 9 (citing *Mullenix v. Luna*, 577 U.S. 7, 16 (2015)) (noting courts may not "define[] the qualified immunity inquiry at a high level of generality."). Although courts do "not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018).

Nevertheless, plaintiff does not provide any legal authority except for *Amador v. Vasquez,* 961 F.3d at 727 n.5. *See generally* Rec. Doc. 121. The Court already clarified that in this context Jones' actions must be considered individually. *Meadours,* 483 F.3d at 421. Here, plaintiff bears the burden to rebut Jones' qualified immunity defense and demonstrate that there were Fourth and Fourteenth Amendment rights that were clearly established at the time of the constitution. *Keller*, 952 F.3d at 221. Plaintiff's burden was not met because his clearly established law contentions

30

are merely a narrative why Jones' actions were unreasonable, and he has not defeated defendant Jones' qualified immunity defense. *Id.* ("Plaintiffs' narrative argument is of no import of a pre-existing or precedential case.").

Jones' motion for summary judgment (Rec. Doc. 76) is granted, dismissing plaintiff's claims against ones in his individual capacity.

**2. Judgment on the pleadings**

Considering Lawrence Jones' motion for judgment on the pleadings (Rec. Doc. 76-1), that motion is moot in view of the above decision to grant Jones' motion for summary judgment (Rec. Doc. 76).[5]

---

[5] Plaintiff also requests the Court to grant an opportunity to amend his pleadings to restate those claims or risk an abuse of discretion. *Id.* at 14-15 (citing *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)) ("district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal"). However, the deadline to amend pleadings was January 14, 2022; plaintiff was already granted an opportunity to amend his complaint (Rec. Doc. 53) on February 1, 2022; his opposition does not directly address his deficient complaint against Jones except to request an opportunity to re-amend his complaint (Rec. Doc. 121 at 14-15); and trial is set to begin on November 14, 2022, which the parties have been aware of since December 16, 2021 (Rec. Doc. 45). Finally, granting another opportunity to amend would waste the Court's and the parties' resources as the Court already

New Orleans, Louisiana this 8th day of November, 2022

_____

SENIOR UNITED STATES DISTRICT JUDGE

---

dismissed plaintiff's claims against Jones under the summary
judgment standard.