UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KARL VON DERHAAR** | **CIVIL ACTION** |
| **VERSUS** | **NO. 21-1653** |
| **MICHAEL STALBERT, ET AL.** | **SECTION "B"(5)** |

ORDER AND REASONS

Before the Court are defendants the City of New Orleans and Shaun Ferguson's motion for judgment on the pleadings and, in the alternative, motion for summary judgment (Rec. Doc. 74), plaintiff's opposition (Rec. Doc. 119), and defendants' reply (Rec. Doc. 172). For the following reasons,

**IT IS ORDERED** that defendants' motion for summary judgment is **GRANTED** (Rec. Doc. 74) and defendants' motion for judgment on the pleadings (Rec. Doc. 74) is **DENIED as moot**. Plaintiff's claims against defendant the City of New Orleans and Shaun Ferguson are **DISMISSED with prejudice.**

I. FACTS

This case arises from an alleged illegal search and seizure. Plaintiff Karl Von Derhaar is an adult resident of Louisiana who was employed as a criminalist at the New Orleans Police Department ("NOPD"). Rec. Doc. 53 at 2-3. While working at the NOPD, plaintiff became increasingly concerned about the efficacy, accuracy, and safety of the crime lab's drug tests. *Id.* at 4. Specifically, plaintiff believed that the NOPD's equipment and tests could not

1

differentiate between marijuana, an illicit substance in Louisiana, and hemp, a legal one. *Id.* Plaintiff was also concerned that criminalists were no longer performing confirmatory tests on drug samples, which ensured that testing is accurate. *Id.* at 5. Because these drug tests are routinely used as the basis for criminal drug convictions in New Orleans, plaintiff feared that inaccurate tests could lead to innocent persons being convicted of marijuana drug crimes. *Id.*

Plaintiff voiced his concerns to his immediate supervisor, Jamie Alexander, the QC Manager. *Id.* Thereafter, defendant Sergeant Michael Stalbert, NOPD crime lab supervisor and drug chemistry and crime technician, and defendant Kim Williams, NOPD crime lab supervisor, learned of plaintiff's concerns. *Id.* at 2, 5. The crime lab supervisors allegedly ignored plaintiff's concerns, and soon after, mandated that employees undergo drug testing as a condition of employment, using the drug testing methods plaintiff claims to be substandard. *Id.* at 5-6.

On September 2, 2020, plaintiff asked defendant Sergeant Stalbert to be placed on leave without pay. *Id.* at 6. The next day, defendants Stalbert, Williams, and Khalid Watson, an officer of the Third District of the NOPD, arrived at plaintiff's residence purportedly to conduct a "wellness check," claiming that plaintiff had been "displaying erratic behavior" in the weeks prior. *Id.* According to plaintiff, defendants Stalbert, Williams, and Watson

2

"forced their way inside [plaintiff's] residence" dressed in full NOPD uniform, in front of plaintiff's child, while plaintiff was in his underwear, and without a warrant or probable cause. *Id.* Defendants told plaintiff that he must go with them to submit to a drug test, even though allegedly he was on sick leave and not on duty. *Id.*

Plaintiff told defendants he did not want to speak with them nor go with them anywhere, but defendant Williams insisted plaintiff must go to the Public Integrity Bureau ("PIB"), while defendants maintained possession of his cell phone. *Id.* at 6-7. Plaintiff inquired as to whether he was under arrest and defendants admitted he was not, but that he still must go to the PIB with them. *Id.* at 7. When plaintiff asked for his cell phone, defendant Williams replied, "you not gonna need it." *Id.* at 8. At one point, plaintiff overheard defendant Williams' phone call with Lieutenant Darryl Watson, another supervisor of the NOPD crime lab, where Darryl Watson stated "do a urinalysis test and he's being ordered. Put him on the clock, he's being ordered to come into work and take his test." *Id.* Defendant Stalbert then said to plaintiff,

> you are now on the clock, you're getting paid, you're being ordered to take a drug test and blood/alcohol/urinalysis test at PIB. The reason we are doing this is because of your behavior and we are concerned that you are harming yourself and your behavior and the acts that you have been exhibiting have been unique and not of your normal character.

*Id.* Plaintiff asked "if I quit right, now, do I have to come with you sir?" and defendant Williams replied affirmatively stating that plaintiff needed "to go up and sign the paperwork." *Id.* Plaintiff was then transported to the toxicology and drug analysis laboratory at the PIB. *Id.* at 8-9.

While at P.I.B., plaintiff and defendant Jones entered a room at the testing facility while defendants Williams and Watson sat in the waiting area. *Id.* at 9. Plaintiff avers he informed defendant Jones that he was taken illegally from his home and he did not want to do a drug test. Rec. Doc. 119 at 5. However, defendant Jones informed plaintiff that because he worked for the city, plaintiff had to take the drug test and he could not refuse. *Id.* plaintiff then asked defendant Jones if he would still be required to submit to a drug test if he resigned from his position, defendant Jones informed plaintiff he would not be required if he resigned, and plaintiff submitted his resignation. *Id.* at 5-6.

Plaintiff's amended complaint alleges defendants violated the Fourth and Fourteenth Amendments of the Constitution and 42 U.S.C. § 1983 by conducting an unlawful arrest, search, and seizure. Rec. Doc. 53 at 9. With respect to the City and Shaun Ferguson, plaintiff avers defendants acted under color of the statutes, ordinances, customs, and usage of the State of Louisiana, City of New Orleans, and the New Orleans Police Department. *Id.* at 2. Plaintiff also alleges defendants violated Louisiana Civil Code

4

Article 2315 and other Louisiana state laws related to kidnapping and false arrest. *Id.* at 9. Accordingly, plaintiff claims defendants are liable for general and special damages and attorney's fees and costs. *Id.* at 10.

## II. LAW AND ANALYSIS

### A. Standards of Review

#### 1. Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)); *see also TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002). A genuine issue of material fact exists if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court should view all facts and evidence in the light most favorable to the non-moving party. *United Fire & Cas. Co. v. Hixson Bros. Inc.*, 453 F.3d 283, 285 (5th Cir. 2006). Mere conclusory allegations are insufficient to defeat summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).

"Once the moving party has demonstrated the absence of a material fact issue, the non-moving party must 'go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial.'" *McCarty v. Hillstone Rest. Grp., Inc.*, 864 F.3d 354, 357 (5th Cir. 2017) (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)). However, "where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994). "This court will not assume in the absence of any proof that the nonmoving party could or would prove the necessary facts, and will grant summary judgment in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the non-movant." *McCarty* 864 F.3d at 358 (internal quotations omitted).

**2. Municipal Liability**

To prevail against a municipality on a 42 U.S.C. § 1983 claim, a plaintiff must prove three elements: (1) the municipality had a policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is the policy or custom. *Jackson v. Valdez*, 852 Fed. Appx. 129, 134-135 (5th Cir. 2021) (per curiam)

(citing *World Wide Street Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 753 (5th Cir. 2009); *see also Monell v. Dept of Soc. Servs.*, 436 U.S. 658, 694 (1978)).

Concerning the first prong, "[t]he existence of a policy can be shown through evidence of an actual policy, regulation, or decision that is officially adopted and promulgated by lawmakers or others with policymaking authority." *Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2010); *see also Burge v. St. Tammany Par.*, 336 F.3d 363, 369 (5th Cir. 2003). An official policy can also be demonstrated via "[a] persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Id.* (citing *Bennett v. City of Slidell,* 735 F.2d 861, 862 (5th Cir.1984) (per curiam)). Finally, "a single decision by a policy maker may, under certain circumstances, constitute a policy for which a [municipality] may be liable." *Brown v. Bryan County,* 219 F.3d 450, 462 (5th Cir. 2000). However, this "single incident exception" is extremely narrow and gives rise to municipal liability only if the municipal actor is a final policymaker. *Bolton v. City of Dallas,* 541 F.3d 545, 548 (5th Cir. 2008) (citing *Woodard v. Andrus,* 419 F.3d 348, 352 (5th Cir.2005)).

7

Second, "[a]ctual or constructive knowledge of [a] custom must be attributable to the governing body of the municipality or to an official to whom that body has delegated policy-making authority. *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001) (citing *Webster v. City of Houston,* 735 F.2d 838, 842 (5th Cir.1984) (en banc)). A municipal policymaker possesses "the responsibility for making law or setting policy in any given area of a local government's business." *City of St. Louis v. Praprotnik,* 485 U.S. 112, 125 (1988). "Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). "This circuit has long distinguished between final decisionmaking authority and final policymaking authority." *Valle*, 613 F.3d at 542 (referring to the Fifth Circuit Court of Appeals). "The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." *Pembaur*, 475 U.S. at 481-82. "[W]hether an official had final policymaking authority is a question of state law." *Id.* at 482.

The third prong requires a plaintiff to demonstrate "moving force" causation, "that a municipal decision reflects deliberate indifference to the risk that a violation of a particular

8

constitutional or statutory right will follow the decision." *Valle*, 613 F.3d at 542 (citing *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 411 (1997)). "Deliberate indifference is a high standard." *Id.* (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001)) ("[A] showing of simple or even heightened negligence will not suffice.").

Another theory of municipal liability under § 1983 applies if the City fails to train the officers. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). To state a cognizable failure-to-train claim, a plaintiff must demonstrate that: (1) the municipality's training procedures were inadequate; (2) the municipality was deliberately indifferent in adopting its training policy; and (3) the inadequate training policy directly caused the constitutional violations in question. *Valdez*, 852 Fed. Appx. At 135 (citing *World Wide*, 591 F.3d at 756); *see also Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 170 (5th Cir. 2010).

**B. Summary Judgment Analysis**

Because plaintiff Von Derhaar fails to identify genuine issues of material fact, defendants the City of New Orleans and Shaun Ferguson are entitled to municipality immunity. Here, plaintiff advances several theories of liability in his opposition memorandum (Rec. Doc. 119-1): (1) The defendants have a practice, or alternatively a custom, that led to his alleged constitutional injuries, Rec. Doc. 119-1 at 9-10, 21-22, and (2) the defendants'

9

liability in plaintiff's § 1983 claim is based in its failure to have a wellness check policy or to train its employees in how to conduct wellness checks. Rec. Doc. 119 at 10, 17. Each theory will be handled in turn.

### 1. Municipal Liability

#### a. Policy and custom

There are generally three means to prove prong one of municipality liability analysis: (1) "actual policy, regulation, or decision that is officially adopted and promulgated by lawmakers or others with policymaking authority;" (2) "[a] persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy;" or (3) "a single decision by a policy maker may, under certain circumstances, constitute a policy for which a [municipality] may be liable." *Valle*, 613 F.3d at 542; *see also Bryan County,* 219 F.3d at 462.

Plaintiff asserts defendants have a policy or custom through a policy decision by an official to whom the lawmakers have delegated policy-making authority. Rec. Doc. 119 at 9-10; *Valdez*, 852 Fed. Appx. at 135 (citing *Pineda*, 291 F.3d at 328, and quoting *Webster*, 735 F.2d at 841). Plaintiff argues that Lieutenant Darryl Watson, a supervisor of the NOPD crime lab, is an official to whom the lawmakers have delegated policy-making authority, and that his

decision to conduct the wellness check and allegedly decision to mandate plaintiff to go to PIB to take a drug test is thus a policy or custom of the city. Rec. Doc. 119 at 9-10.

"Where an action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). In *Pembaur*, the Court of Appeals concluded, and the Supreme Court affirmed, that based upon its examination of Ohio law both the County Sheriff and the County Prosecutor were officials with policy-making authority because Ohio law gave them the power to establish county policy under appropriate circumstances. *Id.* at 484-85. It is a stretch to suggest that Lieutenant Watson, a supervisor of the NOPD crime lab, is an official whose acts or edicts may fairly be said to represent official policy because there does not appear to be any Louisiana law that indicating defendant Watson, or someone in his position, possesses true policymaking authority. *See Pembaur*, 475 U.S. at 481; *Monell*, 436 U.S. at 694.

Next, plaintiff pivots and argues the city has a custom and practice of conducting illegal stops, searches, and seizures that is such a persistent, widespread practice that it fairly represents municipal policy. *See* Rec. Doc. 119 at 20; see also *Bennett,* 735 F.2d at 862. Plaintiff cites as evidence the NOPD-Department of

11

Justice Consent Decree, approved on January 11, 2013, which recognizes that the NOPD has systemic issues related to civil rights violations. Rec. Doc. at 20-21; *Allen v. City of New Orleans*, No. 13-422, 2015 WL 6738529, at *3 (E.D. La. 2015). Plaintiff argues that the Department of Justice investigation revealed that there was "reasonable cause to believe" that NOPD officers had engaged in a pattern of Fourth Amendment violations, and that recent reports indicated that the department was still having similar systemic issues. *Id.*

This pattern theory for municipal liability requires similarity, specificity, and "sufficiently numerous prior incidents" as opposed to "isolated instances." *Valdez*, 852 Fed. Appx. at 135 (citing *Peterson v. City of Fort Worth*, 588 F.3d 838, 851 (5th Cir. 2009), and quoting *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989)). However, there is no rigid rule regarding numerosity to prove a widespread pattern of unconstitutional acts. *Id.* Here, similar to *Allen*, plaintiff fails to demonstrate how the Consent Decree establishes a pattern of conduct related to the specific type of violation at issue in this case. No. 13-422, 2015 WL 6738529, at *4. Accordingly, plaintiff cannot sustain his burden on prong one.

### b. Policymaker

Under the second municipal liability prong, plaintiff must point to a policymaker who can be charged with actual or

constructive knowledge. *Jackson v. Valdez*, 852 Fed. Appx. 129, 134-135 (5th Cir. 2021). Accordingly, plaintiff urges the Court to find that Daryl Watson was the decisionmaker who instructed the defendant officers to bring plaintiff to P.I.B. for a drug test. Rec. Doc. 119 at 9-10. Plaintiff is mistaken.

Recall, "[m]unicipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). However, "[t]his circuit has long distinguished between final decisionmaking authority and final policymaking authority." *Valle*, 613 F.3d at 542. "The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." *Pembaur*, 475 U.S. at 481-82.

As clarified above, plaintiff erroneously conflates decision-making and policymaking authority. Rec. Doc. 119 at 9-10. That is, plaintiff avers that Darryl Watson made an isolated decision but never clarified how Darryl Watson possessed final policymaking authority pursuant to state law. *Id.; see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). Defendants clarify New Orleans ordinances established the Superintendent of Police as the head of the police department. NEW ORLEANS, LA., CODE OF ORDINANCES § 4-501. What's more, Fifth Circuit authority has clarified that the

13

mayor, the city council, and the superintendent of police are examples of permissible policymakers for Section 1983 municipal liability. *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir.), *on reh'g*, 739 F.2d 993 (5th Cir. 1984) (noting "[t]he court further erred in allowing the jury to consider whether 'some similarly ranked official' maintained a custom . . . that overrode city policy" and "[t]here was no proof in this record whatsoever that any police officer subordinate to the Chief even possibly could have occupied the role of a city policymaker."). This alone is dispositive. Accordingly, plaintiff fails on the second prong.

### c. Moving force

Having concluded that plaintiff failed to meet the first and second requirement to establish municipal liability, the Court now addresses why plaintiff also fails to prove moving force causation in the interest of thoroughness.

Under the final prong, plaintiff must prove "that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Valle*, 613 F.3d at 542 (citing *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 411 (1997)). "Deliberate indifference is a high standard" *Id.* (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001)) ("[A] showing of simple or even heightened negligence will not suffice."). Here, plaintiff fails to demonstrate how systemic

14

problems in NOPD were the necessary "moving force" behind the alleged Fourth and Fourteenth Amendment violations that occurred to plaintiff on September 3, 2020.

There are several issues with plaintiff's reliance of the Consent Decree. Notably, the Consent Decree focused upon stops, searches, and arrests as opposed to wellness checks. Rec. Doc. 119 at 20-22. The Court declines plaintiff's invitation to make the broad inference that "[i]f NOPD was not compliant with the policies pertaining to the general public, it is not surprising that officers were freely violating an off-duty employees constitutional rights against unlawful search and seizure." *Id.* at 22. Moreover, if the Court accepted plaintiff's Consent Decree argument, the City would be civilly liable for every civil rights violation committed by NOPD officers in the line of duty, which would provide the *respondeat superior* liability that § 1983 does not allow. *Allen*, 2015 WL 6738529 at *4, *n.5. Plaintiff argues the City also has a custom of violating its drug testing policies, but cites to no additional examples of this violation to constitute a pattern of moving force causation. Plaintiff, therefore, fails to identify a disputed material fact as to a municipal policy or custom that was the moving force of defendants allegedly violating his constitutional rights.

    **2. Failure to train and failure to adopt policy**

Plaintiff's next line of argument for municipal liability shifts to an alleged failure to train officers on how to conduct wellness checks. Rec. Doc. 119 at 10, 17. To state a cognizable failure-to-train claim, a plaintiff must demonstrate that: (1) the municipality's training procedures were inadequate; (2) the municipality was deliberately indifferent in adopting its training policy; and (3) the inadequate training policy directly caused the constitutional violations in question. *Valdez*, 852 Fed. Appx. at 135 (citing *World Wide*, 591 F.3d at 756). Plaintiff argues that defendants' failure to adopt a policy or train officers on wellness checks is evidence of deliberate indifference. Rec. Doc. 119 at 10, 17, 18.

Deliberate indifference may be proven in one of two ways. *Littell v. Houston Indep. Sch. Dist.*, 894 F.3d 616, 624 (5th Cir. 2018). First, "municipal employees will violate constitutional rights 'so often' that the factfinder can infer from the pattern of violations that 'the need for further training must have been plainly obvious to the ... policymakers.'" *Valdez*, 852 Fed. Appx. at 135 (citing *Connick v. Thompson*, 563 U.S. 51, 61 (2011), and quoting *Canton*, 489 U.S. at 390 n.10)). Plaintiff does not cite to a pattern (or even one other instance) of the NOPD violating individuals' Fourth and Fourteenth Amendment rights during wellness checks. Without more, deliberate indifference cannot be shown in this way.

16

Second, absent proof of a pattern, deliberate indifference can be inferred where "evidence of a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation, [can] trigger municipal liability." *Valdez*, 852 Fed. Appx. at 135 (citing Bd. of the City Comm'rs v. Brown, 520 U.S. 397, 409 (1997), and then citing *Canton*, 489 U.S. at 390, 109 S.Ct. 1197). This "single-incident exception" exists "where the facts giving rise to the violation are such that it should have been apparent to the policymaker that a constitutional violation was the highly predictable consequence of a particular policy or failure to train." *Westfall v. Luna*, 903 F.3d 534, 552-553 (5th Cir. 2018) (citing *Burge v. St. Tammany Par.*, 336 F.3d 363, 373 (5th Cir. 2003)).

In *Brown v. Bryan County*, 219 F.3d 450 (5th Cir. 2000), the Fifth Circuit found municipal liability on the single-incident exception because it determined that the county was deliberately indifferent when it had not trained or supervised the officer who committed the allegedly unconstitutional action. *Bryan County*, 219 F.3d at 462. The sheriff had recently hired the officer and knew the officer was young, inexperienced, had a personal record of recklessness and questionable judgment, and that forcible arrests were inevitable for an officer-and yet provided no training to him. *Id.* at 462-463.

17

The undisputed facts in in this case do not provide the same cause for concern the Fifth Circuit recognized in *Bryan County*. As seen in *Bryan County*, evidence of the background and proclivities of the particular officer involved in the constitutional violation is important for the application of the single incident exception. *See Bryan County*, 219 F.3d at 462-463; *Davidson v. City of Stafford, Texas*, 848 F.3d 384, 398 (5th Cir. 2017) (looking at evidence of backgrounds of officers involved); *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998) (noting the officer was stressed, aggressive, and may have had a quick temper); *Roberts v. City of Shreveport*, 397 F.3d 287, 295-296 (5th Cir. 2005) (lacking evidence of officer being involved in prior cases of improper use of deadly force). By contrast, plaintiff provided no evidence that defendants Stalbert, Williams, and Khalid Watson have been involved in any cases involving constitutional violations stemming from a wellness check or drug testing protocols. Plaintiff therefore fails to identify a dispute of a material fact as to defendants' alleged deliberate indifference in not adopting a wellness check policy or training officers on wellness checks. *See Davidson*, 848 F.3d at 398.

New Orleans, Louisiana this 4th day of November, 2022

_____
SENIOR UNITED STATES DISTRICT JUDGE