UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| KARL VON DERHAAR | CIVIL ACTION |
| VERSUS | NO. 21-1653 |
| MICHAEL STALBERT, ET AL | SECTION "B"(5) |

## ORDER AND REASONS

Before the Court are defendant Lieutenant Darryl Watson's ("Lt. Watson") motion for judgment on the pleadings, and in the alternative, motion for summary judgment on qualified immunity (Rec. Doc. 277), plaintiff Karl Von Derhaar's ("Von Derhaar") opposition (Rec. Doc. 284), and defendant Lt. Watson's reply (Rec. Doc. 285). For the following reasons,

**IT IS ORDERED** that defendant Lt. Watson's motion for summary judgment on qualified immunity as to the alleged unlawful entry or search claim is **GRANTED.**

**IT IS FURTHER ORDERED** that defendant Lt. Watson's motion for summary judgment as to the alleged unlawful seizure claim is **DENIED.**

**IT IS FURTHER ORDERED** that the motion for judgment on the pleadings is **DISMISSED AS MOOT.**

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This case arises from an alleged illegal search and seizure. Plaintiff Karl Von Derhaar was employed as a criminalist at the New Orleans Police Department ("NOPD"). Rec. Doc. 53 at 2-3. While working at NOPD, plaintiff became increasingly concerned about the efficacy, accuracy, and safety of the crime lab's drug tests. *Id.* at 4. Specifically, plaintiff believed that the NOPD's

1

equipment and tests could not differentiate between marijuana, an illicit substance in Louisiana, and hemp, a legal one. *Id.* Plaintiff was also concerned that criminalists were no longer performing confirmatory tests on drug samples, which ensured that testing is accurate. *Id.* at 5. Because these drug tests are routinely used as the basis for criminal drug convictions in New Orleans, plaintiff feared that inaccurate tests could lead to innocent persons being convicted of marijuana drug crimes. *Id.*

Plaintiff voiced his concerns to his immediate supervisor, Jamie Alexander, the QC Manager. *Id.* Thereafter, defendant Sergeant Michael Stalbert, NOPD crime lab supervisor and drug chemistry and crime technician, and defendant Kim Williams, NOPD crime lab supervisor, learned of plaintiff's concerns. *Id.* at 2, 5. The crime lab supervisors allegedly ignored plaintiff's concerns, and soon after, mandated that employees undergo drug testing as a condition of employment, using the drug testing methods plaintiff claims to be substandard. *Id.* at 5-6.

On September 2, 2020, plaintiff asked defendant Sergeant Stalbert to be placed on leave without pay. *Id.* at 6. The next day, defendants Stalbert, Williams, and Khalid Watson, an officer of the Third District of the NOPD, arrived at plaintiff's residence purportedly to conduct a "wellness check," claiming that plaintiff had been "displaying erratic behavior" in the weeks prior. *Id.* Defendant Darryl Watson was not physically present at plaintiff's home. *See* Rec. Doc. 277-4 at 4. Von Derhaar, dressed only in underwear, partially opened his door. *Id.* Defendant Stalbert inserted his foot onto the door's threshold and announced that defendants were coming into plaintiff's home, without a warrant or probable cause. Rec. Doc. 284 at 3. Defendant Williams did not enter plaintiff's home. Rec. Doc. 277-1 at 2. Defendant Stalbert ordered Von Derhar to get dressed and speak with defendants Stalbert and Williams outside, to which plaintiff ultimately complied. *See* Rec. Doc. 272 at 6. Outside, Von Derhaar asked whether he could return to his home

and defendant Williams responded that she would call PIB. *Id.* Lt. Williams then called defendant Darryl Watson and placed the call on speakerphone where defendant Darryl Watson can be heard stating, "tell him he's being put back on the clock, he's being ordered to come into work to take this test." Defendant Stalbert then told Von Derhaar,

> you are now on the clock, you're getting paid, you're being ordered to take a drug test and blood/alcohol/urinalysis test at PIB. The reason we are doing this is because of your behavior and we are concerned that you are harming yourself and your behavior and the acts that you have been exhibiting have been unique and not of your normal character.

*Id.* Plaintiff asked "if I quit right, now, do I have to come with you sir?" and defendant Williams replied that plaintiff needed "to go up and sign the paperwork." *Id.* Plaintiff was then transported to the toxicology and drug analysis laboratory at the PIB. *Id.* at 8-9.

While at P.I.B., plaintiff and Sgt. Lawrence Jones entered a room at the testing facility while defendants Williams and Khalid Watson sat in the waiting area. *Id.* at 9. Plaintiff avers he informed Jones that he was taken illegally from his home and he did not want to do a drug test. Rec. Doc. 119 at 5. However, Jones informed plaintiff that because he worked for the city, plaintiff had to take the drug test and he could not refuse. *Id.* Plaintiff then asked Jones if he would still be required to submit to a drug test if he resigned from his position. *Id.* Jones informed plaintiff he would not be required to do so if he resigned, and plaintiff submitted his resignation. *Id.* at 5-6.

Plaintiff alleges defendants violated the Fourth and Fourteenth Amendments of the Constitution and 42 U.S.C. § 1983 by conducting an unlawful arrest, search, and seizure. Rec. Doc. 53 at 9. Specifically, as to defendant Darryl Watson, plaintiff alleges that Lt. Darryl Watson acted with the other defendants "to falsify time records as a false pretextual excuse to proceed with the humiliation, drug testing and arrest of [plaintiff]." Rec. Doc. 53 at 8 ¶ 27.

**LAW AND ANALYSIS**

## I.   Motion for Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party, thus entitling the moving party to judgment as a matter of law. *Smith v. Amedisys*, 298 F.3d 434, 440 (5th Cir. 2002); *see also Etheridge v. Dolgencorp Inc.*, 699 F. Supp. 3d 492, 496 (E.D. La. Oct. 18, 2023) (citations omitted).

In reviewing the record, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Flowers v. Wal-Mart Inc.*, 79 F.4th 449, 452 (5th Cir. 2023) (citing *Reeves v. Sanderson Plumbing Prods.*, Inc., 530 U.S. 133, 150, (2000)). "The moving party bears the burden of identifying an absence of evidence to support the nonmoving party's case." *Id.* (citations omitted). Material in support of a motion for summary judgment may be considered as long as it is "capable of being 'presented in a form that would be admissible in evidence.' " *LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016) (emphasis in original) (quoting Fed. R. Civ. P. 56(c)(2)). A party cannot defeat summary judgment with "conclus[ory] allegations, unsupported assertions, or presentation of only a scintilla of evidence." *Flowers*, 79 F. 4th at 452 (citing *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012)). Instead, the nonmovant must go beyond the pleadings and designate specific facts that prove that a genuine issue of material fact exists. *Id.* (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

## II.  Qualified Immunity

Here, defendant Lt. Darryl Watson contends that he is entitled to qualified immunity as to plaintiff's §1983 claims against him in his individual capacity. *See* Rec. Doc. 277. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "The defendant's acts are held to be objectively reasonable unless *all* reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the" plaintiff's asserted constitutional or federal statutory right." *Cozzo v. Tangipahoa Parish Counsel—President Government*, 279 F.3d 273, 284 (5th Cir. 2002) (citing *Thompson v. Upshur County, Tex.*, 245 F.3d 447, 456 (5th Cir. 2001); *Anderson v. Creighton*, 482 U.S. 635, 641 (1987); *Malley*, 475 U.S. at 340-41). "Thus, an individual defendant's subjective state of mind is irrelevant to the qualified immunity inquiry." *Id.*

Whether a government official is entitled to qualified immunity is a "two-pronged" inquiry, which the court may take in any order. *See Von Derhaar v. Watson*, 109 F.4th 817, 826 (5th Cir. 2024) (citing *Pearson*, 555 U.S. at 236)). The first prong asks whether the facts, taken in the light most favorable to the party asserting the injury . . . show the government official's conduct violated a federal right. *Id.* (citing *Tolan v. Cotton*, 572 U.S. 650, 655–56 (2014) (some internal marks and citation omitted)). "The second prong . . . asks whether the right in question was 'clearly established' at the time of the violation." *Id.* "To be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates

5

that right.' " *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "This 'requires an assessment of whether the official's conduct would have been objectively reasonable at the time of the incident.' " *Id.* (quoting *Conroe Creosoting Co. v. Montgomery County*, 249 F.3d 337, 340 (5th Cir. 2001)). "[D]espite notable factual distinctions between the precedents relied on and the cases then before the Court," law may be clearly established "so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." *Id.* (quoting *Hope v. Pelzer*, 536 U.S. 730, 740 (2002))). "[A] case *directly* on point is not necessary," however, "there must be adequate authority at a sufficiently high level of specificity to put a reasonable official on notice that his conduct is unlawful." *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015) (citing *Morgan v. Swanson*, 659 F.3d 359, 372 (5th Cir. 2011)). "Abstract or general statements of legal principle untethered to analogous or near-analogous facts are not sufficient to establish a right "clearly" in a given context[.]" *Id.* (citing *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)). "For search and seizure claims, the Supreme Court has cautioned that 'courts should define the 'clearly established' right at issue on the basis of the 'specific context of the case' while still "tak[ing] care not to define a case's 'context' in a manner that imports genuinely disputed factual propositions[.]" *Von Derhaar v. Watson*, 109 F.4th 817, 827 (citing *Tolan*, 572 U.S. at 657 (citation omitted). A "good-faith assertion of qualified immunity alters the usual summary judgment burden of proof, shifting it to the plaintiff to show that the defense is not available." *Orr v. Copeland*, 844 F.3d 484, 490 (5th Cir. 2016) (quoting *Cass v. City of Abilene*, 814 F.3d 721, 728 (5th Cir. 2016) (per curiam)).

### A. Supervisor Liability

"Supervisory officials are not liable under §1983 for the actions of subordinates on any theory of vicarious liability." *Turner v. Lieutenant* Driver, 848 F.3d 678, 695 (5th Cir. 2017) (citing

6

*Thompson v. Upshur Cty., Tex.*, 245 F.3d 447, 459 (5th Cir. 2001)). In a general sense, defendant Darryl Watson is not liable for the conduct of defendants Michael Stalbert, Kim Williams, Khalid Watsons and Lawrence Jones. However, "[a] supervisory official may be held liable under § 1983 only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury." *Gates v. Texas Dep't of Protective and Regulatory Services*, 537 F.3d 404, 435 (5th Cir. 2008) (citing *Baker v. Putnal*, 75 F.3d 190, 199 (5th Cir. 1996)). A plaintiff seeking to show that the qualified immunity defense is not available must show: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Cass*, 814 F.3d at 728 (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011)). Therefore, to establish supervisory liability as to defendant Darryl Watson, plaintiff must allege a separate violation of his constitutional rights by Darryl Watson's own conduct when viewed in light of clearly established law. We "have discretion to decide which of the two prongs of the qualified-immunity analysis to tackle first." *Ashcroft*, 536 U.S. at 735 (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). Here, plaintiff contends that defendant Darryl Watson affirmatively participated in the acts that caused plaintiff's constitutional deprivation and that Darryl Watson engaged in wrongful conduct that was casually connected to the alleged constitutional violations.

"Personal involvement of supervising personnel generally includes giving a 'command, signal, or any other form of direction to the officers that prompted' the detention or arrest." *Turner v. Lieutenant Driver*, 848 F.3d 678, 696 (5th Cir. 2017) (citing *Mesa v. Prejean*, 543 F.3d 264, 274 (5th Cir. 2008); *Matthews v. City of E. St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012) ("To show personal involvement, the supervisor must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." (internal quotation marks omitted)

7

; *Jenkins v. Wood*, 81 F.3d 988, 995 (10th Cir. 1996) ("A plaintiff may satisfy [the personal involvement] standard by showing the defendant-supervisor personally directed the violation or had actual knowledge of the violation and acquiesced in its continuance.")).

1) <u>Plaintiff fails to present a genuine issue of material fact as to defendant Darryl Watson's personal involvement in the alleged illegal entry of his residence</u>

Here, the law is clear that the search and seizures of a person's home without a warrant are presumptively unreasonable. *See* Payton v. New York, 445 U.S. 573, 586 (1980). However, there are "a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967). While there is some evidence in the record that defendant Darryl Watson ordered defendants Williams and Stalbert to conduct a wellness check on Von Derhaar, and if "anything . . . was found to be out of the ordinary," directed Williams and Stalbert to bring Von Derhaar to PIB to submit a drug test because of plaintiff's status as a "drug analysis person." *See* Rec. Doc. 53-5 at 9.

Plaintiff fails to present a genuine issue of material fact showing that Darryl Watson directed, or otherwise affirmatively participated in specific actions that defendants Stalbert and Khalid Watson took when they entered plaintiff's home. Darryl Watson was not present at plaintiff's home on September 3, 2020, nor has plaintiff shown that Darryl Watson was aware of the manner in which defendant Stalbert would conduct the purported "wellness check," or that Darryl Watson authorized the unlawful entry into plaintiff's home. We find that a reasonable juror could not find that Darryl Watson committed a constitutional violation as to plaintiff's illegal entry claim. Plaintiff conceded at oral argument that there is no precedent for supervisor liability for an unlawful entry claim where a supervisor neither authorized an unlawful entry nor reasonably foresaw that such an entry would occur.

2) <u>Violation of a Constitutional Right– Seizure of Plaintiff</u>

Any reasonable official under the totality of circumstances here or in Darryl Watson's position should have known that ordering the seizure of a private citizen from their home for the purpose of completing a drug test, without a warrant, probable cause, or exigent circumstances is objectively unreasonable. *See Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 616 (1989). Moreover, under the circumstances presented, a reasonable person would not believe that they were free to disregard the police in Von Derhaar's position and go about their business freely. *Keller v. Fleming*, 952 F.3d 216, 222 (5th Cir. 2020). Plaintiff argues that "Darryl Watson affirmatively directed and authorized the unlawful seizure and drug testing of Mr. Von Derhaar without a warrant, probable cause, or exigent circumstances." Rec. Doc. 284 at 9. Plaintiff states "[s]pecifically, Darryl Watson instructed subordinate officers during the incident to place Mr. Von Derhaar "on the clock" and bring him to the P.I.B. for a drug test—actions that directly led to the violation of Mr. Von Derhaar's Fourth and Fourteenth Amendment rights." Rec. Doc. 284 at 9. In plaintiff's view, Darryl Watson's directive over the phone was the causal connection that led to the alleged unlawful seizure of plaintiff, which constitutes affirmative participation and personal involvement under clearly established law. *Id.* at 9-10.

On the other hand, Darryl Watson argues that he was not physically present at plaintiff's home, nor did he physically bring plaintiff to PIB for the attempted drug testing. *See* Rec. Doc. 277-1 at 5. Defendant argues that he "was not giving an order to Lt. Williams or to Von Derhaar in saying that [plaintiff] should be 'put on the clock' and that he had to 'come into work and take a drug test.' " *Id.* at 7. Darryl Watson also argues that he "was not in Von Derhaar's chain of command, was not a supervisor of Von Derhaar," not was he "assigned to the NOPD Crime Lab." *Id.* at 8. Defendant further argues that he had no part in Lt. Williams directing Officer Khalid Watson to frisk Von Derhaar, Lt. Williams directing Officer Khalid Watson to place Von Derhaar in the back

of the police unit, or Officer Khalid Watson driving Von Derhaar to PIB. *See* Rec. Doc. 277-1 at 6. However, the body-camera footage suggests that Darryl Watson was aware that Von Derhaar objected to being taken to PIB to submit drug testing. *See* Rec. Doc. 284-9 (Exhibit P-50 Body Worn Camera Footage at 11:00). The footage clearly shows that Lt. Williams called Darryl Watson for guidance after Von Derhaar's objections, and ultimately, despite those objections, a reasonable jury could find that Darryl Watson either ordered Von Derhaar to go to PIB or didn't. *See id.* Although Darryl Watson argues that the present officers and Von Derhaar were not in his chain of command during the incident, a reasonable juror could find that the present officers were nevertheless acting at Darryl Watson's direction, or PIB's authority or didn't. *Id.* The former position is also supported by defendant Stalbert's statements in the footage. *Id.* Thus, Darryl Watson's subjective intent is of no matter, his statements over the phone do not demonstrate an 'objective reasonableness' considering plaintiff's objections and disputed material evidence of record to the alleged seizure.

New Orleans, Louisiana this 17th day of July, 2025

SENIOR UNITED STATES DISTRICT JUDGE